In the Matter of PHARMACEUTICAL SOCIETY OF THE STATE OF NEW YORK, Appellant, v ROBERT ABRAMS, as Attorney-General of the State of New York, Respondent.

Third Department, December 3, 1987

### APPEARANCES OF COUNSEL

*Hinman, Straub, Pigors & Manning, P. C. (Paul M. Collins* of counsel), for appellant.

*Lloyd D. Constantine (Robert Abrams, Attorney-General [Mark Moskovitz, O. Peter Sherwood, Harvey Berman, Alan Pfeffer* and *Katherine Frank]* of counsel), for respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

Pursuant to authority vested in him by General Business Law § 343, respondent issued a subpoena duces tecum to petitioner. The information sought was based on an investigation respondent was conducting concerning a proposed prescription drug plan for State employees and retirees. Petitioner moved to quash the subpoena.

In opposition to the motion, respondent submitted an affidavit wherein it was stated that the proposed plan included, among other things, incentives for the use of generic drugs and an option method of acquiring drugs by mail. It also included a dispensing fee to be paid to pharmacists to cover costs other than the drug itself, as well as a provision to reimburse pharmacies for drugs at a percentage discount from average wholesale price. Many pharmacists and pharmacies not only declined to enroll in the plan, but also took part in lobbying activities to register their disapproval of the plan. As a result of low enrollment and opposition to the plan, the reimbursement rate was increased. This resulted in increasing the cost of the program to the State by approximately $6 million.

Based on these events, respondent began an investigation and issued the subpoena in question. Respondent argued that there was a possibility that there had been a violation of this State's antitrust laws as codified by General Business Law article 22 (hereinafter the Donnelly Act). Petitioner's application to quash the subpoena was based on its assertion that pharmacy is a profession and therefore is exempt from investigations conducted pursuant to the Donnelly Act. Supreme

Court denied the motion to quash (134 Misc 2d 1019). This appeal by petitioner ensued.

General Business Law § 340 (1) provides, in substance, that any contract, agreement or plan whereby competition in the conduct of any business or trade in this State may be restrained is against public policy, illegal and void. In determining whether there has been a violation of this statute, respondent is authorized under General Business Law § 343 to issue subpoenas. It was pursuant to General Business Law § 343 that respondent issued the subpoena in this case.

In support of its argument that pharmacy is a profession and is therefore exempt from the proscriptions of the Donnelly Act, petitioner relies heavily on two Court of Appeals cases: *Matter of Freeman* (34 NY2d 1) and *People v Roth* (52 NY2d 440). In *Freeman,* the court found that the legal profession was not a business or trade within the meaning of General Business Law § 340 (1) and was therefore exempt from the proscriptions of the Donnelly Act. In *Roth,* where the defendants were physicians, the court followed *Freeman* "[s]ince we can discern no principled basis for distinguishing between the legal profession and the medical profession" *(People v Roth, supra,* at 447), and therefore found the medical profession to be entitled to a like exemption.

Respondent, while conceding that pharmacists are licensed professionals, argues that *Roth* and *Freeman (supra)* do not stand for the proposition that all professionals are exempt from the Donnelly Act's provisions. In support of his position, respondent relies on *Matter of Westchester County Pharm. Socy. v Abrams* (135 Misc 2d 441) wherein the court rejected the argument that pharmacy was exempt from the Donnelly Act and distinguished *Freeman* and *Roth* by concluding that, unlike doctors and lawyers, pharmacists do not primarily provide services but rather sell goods. We disagree. We hold that the dispensing and advising of patients with respect to prescription drugs is professional rather than commercial in nature. This is true even though a portion of the services rendered include the dispensing of medicines.

We also reject the view set forth in *Westchester (supra),* and relied upon by respondent, that the analysis of the Court of Appeals in *Freeman (supra)* strongly suggests that the term "professional" was used as one of art and included the very stringent statutory scheme of regulation for lawyers, a fact which is not present in the regulation of pharmacy. We

disagree. Pharmacists are highly regulated (see, Education Law § 6804 [a]) and the State Board of Pharmacy can revoke or suspend a pharmacist's or a pharmacy's license (Education Law § 6808 [6]). Further, medicine and pharmacy are grouped together and regulated under 8 NYCRR part 29 and a reading of this regulation reveals almost identical provisions for both professions (compare, 8 NYCRR 29.4 [medicine], with 8 NYCRR 29.7 [pharmacy]). Additionally, the statutory guidelines for pharmacy are actually more extensive (see, Education Law §§ 6800-6826) than they are for medicine (see, Education Law §§ 6520-6529).

Finally, on this point, we give great weight to the characteristics used by the Court of Appeals in distinguishing a profession from a business. In Freeman, the court stated that a profession "is distinguished by the requirements of extensive formal training and learning, admission to practice by a qualifying licensure, a code of ethics imposing standards * * * beyond those that prevail or are tolerated in the marketplace, a system for discipline * * * a duty to subordinate financial reward to social responsibility, and * * * an obligation on its members * * * to conduct themselves as members of a learned, disciplined, and honorable occupation" (Matter of Freeman, supra, at 7). We therefore conclude that, based on Freeman and Roth (supra), pharmacists should be found exempt from the provisions of the Donnelly Act.

However, despite our conclusion that individual pharmacists are professionals and thereby entitled to an exemption from the strictures of the Donnelly Act, we hold otherwise with respect to the status of petitioner. As stated in Freeman, the exemption applies to professions because a "profession is not a business" (Matter of Freeman, supra, at 7). From the point of view of the employer for whom a pharmacist works, the sale of drugs is trade or commerce. Persons and business organizations subject to the Donnelly Act cannot escape liability by cloaking their actions with participation of exempt individuals (State of New York v Horsemen's Benevolent & Protective Assn., 55 AD2d 251; State of New York v Milk Handlers & Processors Assn., 52 Misc 2d 658, affd 28 AD2d 971). This result is not at variance with either Freeman or Roth (supra). In Freeman, only members of the legal profession belonged to the local Bar Association accused of improperly setting fee schedules. In Roth, the only defendants were licensed physicians.

Therefore, while Supreme Court erred in determining that pharmacy was not an exempt profession, petitioner, since it is a pharmaceutical association composed of both members and nonmembers of the pharmaceutical profession, should not be found exempt.

Additionally, since the actual subject matter inquiry is within respondent's power, a legal basis exists for the issuance of the subpoena. Petitioner's 1st Amendment rights to decline to enroll in certain plans involving their profession do not extend to group boycotts *(see, Matter of Hirschorn v Attorney-General of State of N. Y.,* 93 Misc 2d 275, 277, *affd* 63 AD2d 865).

Next, we must address petitioner's claim that the subpoena in this case is improper. While it is true that respondent does not possess arbitrary and unbridled discretion in inquiring into the prospect of possible violations of law, especially with respect to subpoena duces tecum *(Matter of A'Hearn v Committee on Unlawful Practice of Law,* 23 NY2d 916, 918), there is a presumption that respondent is acting in good faith *(Matter of American Dental Coop. v Attorney-General of State of N. Y.,* 127 AD2d 274; *Matter of Crowley Foods v Lefkowitz,* 75 AD2d 940, *lv denied* 51 NY2d 707). To support the issuance of the subpoena, respondent is not required to show probable cause or to disclose the scope of the investigation *(Matter of Hynes v Moskowitz,* 44 NY2d 383, *appeal dismissed sub nom. Far Rockaway Nursing Home v Hynes,* 439 US 888). His obligation is to show his authority, the relevancy of the items sought and some factual basis for the inquisitorial action *(Matter of Crowley Foods v Lefkowitz, supra).* Furthermore, even if the subpoena is not sufficient on its face, reference may be had to an affidavit in opposition to the motion to quash *(Matter of La Belle Creole Intl. v Attorney-General of State of N. Y.,* 10 NY2d 192). Here, in looking at the subpoena and the affidavit in opposition to the motion to quash, we conclude that respondent has sufficiently shown his authority, the factual basis for his investigation and the relevancy of the items sought.

MAIN, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Order affirmed, without costs.